66 So.2d 720

**LATTIMER et al. v. STRATFORD.**

3 Div. 628.

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Aug. 6, 1953.

406

Walter J. Knabe, Montgomery, for appellants.

Godbold & Hobbs, Montgomery, for appellee.

PER CURIAM.

This is the second appeal in this case. The first appeal was from a decree sustaining demurrers to the bill of complaint. Stratford v. Lattimer, 255 Ala. 201, 50 So. 2d 420. We there held that the demurrers were not well taken and, accordingly, reversed and remanded the case. The present appeal is from the final decree granting the relief prayed for. The questions now presented are the same as those presented and determined in the first appeal. The only difference is that on the first appeal the sufficiency of the allegations of the bill was being tested by demurrer, while in the instant appeal we have for consideration proof of the allegations. There is no conflict in the evidence, nor is there any question about the evidence being ample to support the allegations. We see no need, therefore, of here making a repetitious recital of details of the case.

As is required of us, we have reviewed the case anew on this appeal without regard to the former decision. Code 1940, Tit. 13, § 28; Wilkey v. State ex rel. Smith, 244 Ala. 568, 579, 14 So.2d 536, 151 A.L.R. 765; Birmingham News Co. v. Birmingham Printing Co., 213 Ala. 256, 258, 104 So. 506. We do not find that there is any conflict between our present views as to the law of the case and the conclusions reached in the former opinion. Accordingly, for the purposes of this appeal, we expressly approve the rulings on the law and the conclusions reached in

that opinion, Stratford v. Lattimer, supra.

The decree of the lower court is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, STAKELY and MERRILL, JJ., concur.

GOODWYN, J., dissents.

GOODWYN, Justice (dissenting).

It is my view that the deed of May 11, 1898, from S. Cornelia Graham to her daughter, Eugenia Stratford, conveyed a life estate to said Eugenia Stratford with a vested remainder in her children. Therefore, I respectfully dissent from the majority holding "that the language of the conveyance from Mrs. Graham to her daughter, Eugenia, imports a contingent stirpital disposition of the property to the grantee's children after grantee's death". [255 Ala. 201, 50 So. 423].

Leaving out the description and the acknowledgment, the deed here involved is as follows:

"State of Alabama
"Montgomery County

"Know All Men By These Presents: That I, S. Cornelia Graham, for and in consideration of the natural love and affection which I have for my daughter, Eugenia Stratford, and for the further consideration of the sum of Five ($5.00) Dollars to me in hand paid by the said Eugenia Stratford the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents to hereby *grant, bargain, sell and convey unto the said Eugenia Stratford, for and during the term of her natural life, and after her death to her children,* the following described real estate situated in the City and County of Montgomery, and State of Alabama, towit:

\* \* \* \* \* \*

"To have and To Hold the aforegranted premises, together with the appurtenances, privileges and improvements thereunto belonging, unto the said Eugenia Stratford *for and during the term of her natural life and after her death to her children*

*or their descendants; that is if any of the said Eugenia Stratford's children shall die before the said Eugenia, leaving a child, or children, such child or children shall take the interest in said lot to which the parent would have been entitled had it been living.* (Italics supplied.)

"In Witness Whereof, I have hereunto set my hand and seal this the 11th day of May, 1898.

"/s/ S. Cornelia Graham (L.S.)"

Aside from any other consideration, it seems to me that the decision of this court in the case of McCurdy v. Garrett, 246 Ala. 128, 19 So.2d 449, effectively and completely answers any question as to the right of the four children of Eugenia Stratford, by their deed of May 28, 1920, to merge in their mother, the said Eugenia Stratford, the entire title to the property which she could devise by will. In that case, C. W. Garrett devised and bequeathed his property to his wife during her natural life and widowhood; and at her death it was to vest, share and share alike, in his children, both those living and any after born children. The will then provides as follows:

"Should any of said children die leaving a descendant or descendants living, then the share of such deceased child, shall go to his or her said descendant or descendants."

The question there presented and determined was whether the children of the testator "took a vested remainder in fee" as against the claim of a son of one of the testator's children that he had "a contingent remainder, the right of enjoyment being postponed until the death of his grandmother and his mother." It was held that the testator's daughter and her five living children owned and held "the entire title to said property and have the right to sell and convey the same; and, so long as they jointly agree, to dispose of the proceeds thereof as they see fit." In reaching this conclusion, this court said:

"'The settled law is that a will speaks from the death of the testator, and that, in the absence of a clear manifestation of the testator's intent to the contrary, estates shall be held to vest at the earliest possible period. *The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction.* "The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested." * * *.' Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 674.

"The primary objects of the testator's bounty, as clearly appeared, were his wife and his five daughters, all of whom are still in life and are his heirs at law. The manifest intent of the testator was to vest in his wife a limited estate for life or during widowhood, to her full enjoyment, with a limited power of disposal for reinvestment or payment of testator's debts, with vested remainder to his five daughters, in the absence of other children born to testator and his wife. White et al. v. Fowler, 245 Ala. 209, 16 So.2d 399; Wilson et al. v. Ward, 224 Ala. 147, 138 So. 826. *The contingency in respect to the death of the named devisees connotes a testamentary intent to vest the remainder in the named devisees and to direct the descent according to the law of descent and distribution.* So that the complainants named in the bill, all of whom are sui juris, own and hold the entire title to said property and have the right to sell and convey the same; and, so long as they jointly agree, to dispose of the proceeds thereof as they see fit." (Italics supplied.)

But without considering the McCurdy case, supra, as controlling authority, it seems to me that a reasonable interpretation of the deed, in the light of recognized rules of construction, permits of no other conclusion than that the grantor intended to vest the remainder in the children of Eugenia Stratford.

In the recent case of Henry v. White, 257 Ala. 549, 60 So.2d 149, 152, this court, through Lawson, J., had occasion to review and again approve the following apt rules of construction, viz.:

"The real inquiry in the construction of a deed is to establish the intention of the parties, especially that of the grantor; but a corollary to this rule is that the intention must, if possible, be gathered from the language used in the instrument submitted for construction and that, when it can in this way be ascertained, arbitrary rules are not to be applied. Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718, 19 L.R.A., N.S., 719. So-called arbitrary rules should never be resorted to until all efforts to reconcile the conflicting parts have failed. Petty v. Boothe, 19 Ala. 633.

"If, however, two conflicting intentions are expressed which cannot be reconciled there is no alternative but to construe the deed by the rules, even though they may be denominated arbitrary. Dickson v. Van Hoose, supra; Graves v. Wheeler, 180 Ala. 412, 61 So. 341.

"One of the rules in the construction of deeds is that if there be two clauses which are utterly inconsistent with each other, and which cannot be reconciled or made to stand together, the last shall give way to the first, the maxim being 'the first clause in a deed, and the last in a will shall prevail.' Petty v. Boothe, supra. The rule has been stated many times in our cases that the granting clause, unless ambiguous or obscure, prevails over introductory recitals, statements in the habendum clause or other clauses in the deed, if they are contradictory or repugnant to the granting clause. * * *

"If the granting clause does not expressly designate the estate conveyed, and there is nothing in the other parts of the deed to indicate the estate intended to be conveyed, the provisions of Title 47, § 14, Code 1940, have application. Said section reads: 'Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended.' Graves v. Wheeler, supra.

"But where the granting clause does not expressly designate the estate conveyed, and the other clauses indicate the nature and character of the estate conveyed, there is no room for the operation of the provisions of law now codified as § 14, Title 47, Code 1940. Graves v. Wheeler, supra. The conclusions reached in Deramus v. Deramus, 204 Ala. 144, 85 So. 397, 398; Ward v. Torian, 216 Ala. 288, 112 So. 815; Gentle v. Frederick, 234 Ala. 184, 174 So. 606, are in accord with this principle. None of the granting clauses in the deeds construed in those cases expressly designated the estate conveyed, whereas other clauses in the deeds did indicate the estate conveyed; hence those clauses controlled. There was no field of operation for the statute or the principle that where the granting clause provides for a certain or specific estate and the character or nature of said estate is changed or lessened by some interlocutory clause, or by the habendum, there is a conflict or repugnancy and the granting clause prevails."

It is to be noted that Sec. 14, Tit. 47, Code 1940, is identical with Sec. 1020, Code of 1896, which was the law when the deed of May 11, 1898, was executed.

Another rule, not referred to in the Henry case, supra, which has been consistently recognized and approved by this court, is thus stated in George v. Widemire, 242 Ala. 579, 585, 7 So.2d 269, 272:

"The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment, and this being true, it is held: 'The intent to postpone the vesting of an estate must be clear, and *must not arise by mere inference or construction.*'" (Italics supplied.)

To the same effect are the following cases: Allen v. Maxwell, 249 Ala. 655, 660, 32 So.2d 699; McCurdy v. Garrett, supra; Duncan v. De Yampert, 182 Ala.

528, 532, 62 So. 673; Graves v. Wheeler, 180 Ala. 412, 417, 61 So. 341.

The foregoing statement that "The intent to postpone the vesting of an estate * * * must not arise by mere inference or construction" means, of course, that before a deed will be construed as not passing a vested estate, the intention to limit the estate must be so clear as to leave no room for inference or the application of rules of construction.

A rule generally followed in other jurisdictions is stated in 26 C.J.S., Deeds, § 114, to be as follows:

"The law favors the vesting of remainders at the earliest possible moment, and a remainder will be construed as vested rather than as contingent where such a construction can be given to the instrument without doing violence to the intention of the grantor."

Now, let us look at the deed in the case before us.

The first step in the process of ascertaining what is intended by a deed is to see whether that intent can possibly "be gathered from the language used in the instrument", for, "when it can in this way be ascertained, arbitrary rules are not to be applied." Henry v. White, supra. I think the intent can be gathered from the language used in the deed here involved, and that there is no need of applying arbitrary rules to aid in arriving at that intent.

The granting clause clearly creates a life estate with a vested remainder over in favor of the life tenant's children. Can the language used in the habendum be reconciled with the estate created by the granting clause? The habendum provides that should any of the life tenant's children die before the life tenant and leave surviving a child or children, then said child or children "shall take the interest in said lot to which the parent would have been entitled had it been living." The purpose of this provision, it seems to me, was simply to provide for a devolution of title in event a vested remainderman should die intestate without prior alienation of his interest. I fail to see in the language there used any

expression indicating a clear intent to override the clearly expressed intent in the granting clause. As stated by this court in McCurdy v. Garrett, supra [246 Ala. 128, 19 So.2d 450], when considering a similar provision in a will:

"The contingency in respect to the death of the named devisees connotes a testamentary intent to vest the remainder in the named devisees and *to direct the descent according to the law of descent and distribution.*" (Italics supplied.)

There can hardly be any question that if John B. Stratford had been living at the time of his mother's death he would not have been entitled to the interest in the property which he had already conveyed to his mother. Being so, can it be said, considering the language used in the deed, that the grantor intended that John B. Stratford's child could take an interest which John B. Stratford himself would not have taken had he been living? As I see it, the habendum itself furnishes a complete answer to the question by providing that such child "shall take the interest in said lot to which the parent would have been entitled had it been living." John B. Stratford, the parent, had he been living at the time of his mother's death, would not have been entitled to any interest in the property, he having already conveyed his remainder interest to his mother. Therefore, his child, the appellee, can take nothing, since he takes only the interest which his father, John B. Stratford "would have been entitled" had he been living. On the other hand, if John B. Stratford had not conveyed his interest during his lifetime and had not devised his interest by will, then his interest in the property would have descended to appellee. Such construction seems to me to be a reasonable one, considering the language used in both the granting and habendum clauses, and certainly does not do violence to such language.

If it be found that the intent cannot be gathered from the language used, thereby obviating the need of applying arbitrary rules of construction, the next step is to ascertain whether the habendum clause is

contradictory of or repugnant to the granting clause. If so found, the granting clause prevails. Henry v. White, supra; Green v. Jones, 257 Ala. 683, 60 So.2d 857.

There can be no dispute that insofar as the granting clause is concerned a vested remainder was conveyed to John B. Stratford; and this means—considering the granting clause separately—that he had, immediately upon execution and delivery of the deed of May 11, 1898, an actual estate in the property, that is, an estate which was alienable, devisable and descendible. It means, too, that the deed of May 28, 1920, executed by all of the remaindermen, viz.: John B. Stratford, Celia Stratford Lattimer, Malcolm Graham Stratford, and William S. Stratford, and their respective spouses, to their mother, Eugenia Stratford, the life tenant, had the effect of merging in her the entire title, which was alienable, devisable and descendible. The majority view, however, seems to be that the habendum clause changes all this; that this clause shows a clear intent on the part of the grantor to change or limit the grant to "a contingent stirpital disposition of the property to the grantee's children after grantee's death". [255 Ala. 201, 50 So. 423.] This means, as I understand it, that the right to pass a fee-simple title to the property could not come into being until after the death of Eugenia Stratford. Is not this view of the habendum a manifest recognition that it is contradictory of and repugnant to the granting clause? Most certainly there is created, under the majority view, an estate entirely different from that created by the granting clause. When thus considered, it seems to me that there is an irreconcilable conflict between the two clauses, which means, of course, that the granting clause should prevail.

The argument is made that the rules require the court to ascertain the grantor's intent and that this must be gathered from consideration of the entire instrument, and including the habendum as well as the granting clause. The same argument was made in Green v. Jones, supra [257 Ala. 683, 60 So.2d 858], where this court said:

"That contention states the applicable rule where there is no irreconcilable conflict between the granting clause and the habendum clause."

Here, I see no escape from an irreconcilable conflict, if the conclusion of the majority is accepted.

Pursuing the majority view to its logical conclusion, it means that the grantor necessarily must have intended her bounty to be more for the benefit of her unknown and uncertain great-grandchildren than for the immediate benefit of her daughter and her daughter's four children, all living at the time the deed was executed. For does not the majority construction prohibit the daughter, even by gift from her four children, from acquiring the fee-simple title to the property? Is not the effect to say, in so many words, that the grantor intended to preserve the property for her unknown, uncertain, and yet-to-be-born great-grandchildren to the exclusion of her living daughter and her living grandchildren? Is it a reasonable construction to say that the grantor clearly intended to prohibit the children of her daughter from doing exactly what they did—giving to their mother, the daughter of the grantor and the primary object of her bounty, their remainder interest, thereby merging in her the fee-simple title? Is it not a natural and normal assumption, in the absence of a clear and obvious intent to the contrary, that the primary objects of the grantor's bounty were, first, her daughter, and then her daughter's children, all of whom were in being when the deed was executed? Is it a reasonable construction of the deed, in the light of the accepted rules, to say that the grantor clearly intended to postpone the vesting of title until after the death of her daughter?

Again, aside from the other considerations, I feel that the case of McCurdy v. Garrett, supra, is determinative of this appeal; and that the rule of early vesting of an estate, there applied, is equally applicable here.

I further feel that the rule which says that the intent to postpone the vesting of an estate "must not arise by mere inference or construction" is of particular significance here. For is it not by the device of enlarging the granting clause, by construc-

tion, to include "grandchildren" that the majority come to their conclusion?

Since, as recognized in the per curiam opinion, we are required on this appeal to review the case anew without regard to the former decision, the doctrine of stare decisis has no application. I would note disapproval of the conclusion reached in the former decision, Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420, and would hold that appellants, as devisees under the will of their mother, Eugenia Stratford, are entitled to the property as against the claim of appellee. Therefore; I respectfully dissent.